GEORGE L. MARCH *vs.* THE BRICKLAYERS AND PLASTERERS UNION No. 1 OF CONNECTICUT ET AL.

First Judicial District, Hartford, March Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A labor union has no right to threaten to injure or destroy the business of a person who is under no obligation to it, contractual or otherwise; and money demanded by and paid to the union as the price of its forbearance to execute such threats is illegally exacted and may be recovered by suit.

The plaintiff, a brickmaker, sold brick to a boss-mason who employed non-union men. Thereupon the defendant, a labor union, under-

took to fine or penalize him in the sum of $100, although he was
not a member of the union or under any obligation to it, contract
ual or otherwise. Subsequently the plaintiff began to furnish
brick to a boss-mason who employed union help, and the defend-
ant then threatened to withdraw its men from the job and forbid
them to handle any of the plaintiff's brick unless he paid said sum
to the union. It was within the power of the defendant to carry
out these threats, to the plaintiff's serious injury, and accordingly
he yielded and paid the money, and afterward sued to recover it.
*Held* that the defendant's conduct was an act of pure extortion,
and in violation of our statute, § 1296, as well as of the universally
accepted principles of the common law, and that the union could
not retain the money so exacted.

Argued March 6th—decided April 17th, 1906.

ACTION to recover money alleged to have been extorted
from the plaintiff by means of unlawful threats, intimida-
tion and coercion, brought to and tried by the Court of Com-
mon Pleas in Hartford County, *Coats, J.;* facts found and
judgment rendered for the plaintiff, and appeal by the de-
fendants. *No error.*

The plaintiff conducted a brick-yard and manufactured
and sold brick. The defendant union was a voluntary as-
sociation composed of journeymen bricklayers and plasterers.
The defendant Butler was a member of the union and its
financial secretary and business agent. As business agent
it was made his duty, among other things, to see that mem-
bers of the union did no work in violation of its require-
ments, and to ascertain and report to the union all brick
manufacturers who furnished brick to any "boss-mason"
who was proscribed by the union as "unfair," as being the
employer of other than union bricklayers and plasterers, and
generally to act as the agent of the union in securing obedi-
ence to its orders and compliance with its demands. The
plaintiff was not a member of the union, nor an employer of
members of it; neither was he under any contractual or
other obligation to it, save such obligation as one owes to
other members of society. The defendant union had voted
that its members would refuse to handle brick from any
brickmaker who should furnish brick to "unfair" bosses.

By authority of the union, notice of this action had been mailed to the plaintiff, and to substantially all other brick-makers in the vicinity of Hartford. It had also been voted that the two secretaries prepare and cause to be printed cards having thereon the names of those "boss-masons" who were by the union classed as "fair" and those classed as "unfair." These had been so prepared, accepted by the union and distributed. The plaintiff received said notice, and one of said cards was delivered to him by Butler. A few months subsequently the plaintiff sold and delivered brick to a "boss-mason" who was classed as "unfair." Thereupon the union voted to "place damages of $100 against said March for violating agreement with Bricklayers' Union." There was no such agreement. Shortly afterward the plaintiff sold and began to deliver to one Flynn, a "fair" boss-mason, brick for the construction of a building upon which the latter was doing the brick work. After a few loads had been so delivered the defendant Butler, acting for the union in his said capacity as business agent, visited this building and had a talk with the plaintiff and Flynn. The penalty imposed upon the plaintiff was then discussed, and Butler then either expressly said to the plaintiff and Flynn, or intended from what he did say that they should understand, and they did understand, that he, "Butler, acting for the union and the union acting through him, could and would, through their control over Flynn's workmen, then had and to be exercised by Butler, prevent Flynn from using brick bought by him from March, by immediately stopping Flynn's workmen laying the brick, unless Flynn would agree to become surety for the payment by March to the union of the $100 demanded by it from him, as aforesaid," unless the union should at its next meeting afford the plaintiff some relief. To this Flynn agreed, and the plaintiff continued to make deliveries. The plaintiff appeared at this meeting and was accorded a hearing. A motion "to reduce the fine" to $50 was lost, and Butler was instructed to collect it. The following day Butler met the plaintiff and Flynn, told them that the union held out for the $100, and added that

they were going to have it. From what he said then "he intended that March and Flynn should understand and believe, and they did understand and believe, that Butler had instructions from the defendant union to stop the bricklayers who were working for Flynn from work for him upon said . . . building, and to cause them to strike, unless March or Flynn at once paid the hundred dollars demanded by the defendant union; and that he, Butler, could and would do as he represented that he was instructed to do." Flynn and March both protested against the payment, but influenced by the aforesaid representations of Butler, Flynn, who was indebted to March for brick, paid Butler the $100 with the assent of March, and charged the same to March on his account; and said money was paid, as aforesaid, to save greater loss threatened, as aforesaid, to the business of March and Flynn, and for that reason only. Butler paid over the money to the defendant union at its next meeting.

Demands for the return of the money were made on the defendants and refused. The complaint seeks the recovery of the money so paid.

*Joseph P. Tuttle*, for the appellants (defendants).

*Walter S. Schutz* and *Stanley W. Edwards*, for the appellee (plaintiff).

PRENTICE, J. The complaint alleges that the defendants conspired, combined and confederated with each other and with other persons to extort, demand and obtain from the plaintiff the sum of $100; that in pursuance of that conspiracy and combination they threatened to injure the plaintiff in his property and business unless said sum was paid; and that by reason of said conspiracy and combination, and of said threats, intimidation and coercion, and by such means alone, said sum was paid by the plaintiff to the defendants. It is found that the payment was made, that the combination between the members of the defendant union to secure that payment, and Butler's agency for it, existed, and that the

money was paid through the operation of that combination. So far there is no contention here.

The plaintiff further claims that the combination for the purposes of its controversy with him, resulting in the payment by him, was an unlawful one. He claims that it was unlawful (1) because its object was unlawful, and (2) because the means to accomplish that object were unlawful. He also claims that, as the payment was one into which he was coerced through the operation of this unlawful conspiracy, he is entitled to recover it back. The defendants do not deny that a combination or confederation of men, either for the accomplishment of an unlawful object or for the accomplishment of a lawful object by unlawful means, is unlawful; neither do they deny that if the combination between them, which resulted in the payment in question, was an unlawful one, the plaintiff is entitled to recover. The contention between the partes, therefore, becomes primarily resolved into one as to whether the conceded confederation of the defendants, through which the payment was obtained, was an unlawful one by reason of the unlawful character of either its object or the means employed.

The plaintiff asserts the right to a judgment upon narrower grounds than those thus suggested, and notwithstanding a failure to establish an unlawful conspiracy. This claim, however, is subordinate to his main proposition, and need not be considered unless it shall appear that his principal contention, already stated, fails him.

The disagreement between the plaintiff and the defendants as to the lawfulness of the object of the latter's combination is one which arises chiefly, if not entirely, out of a difference of view as to what is to be regarded as that object. The defendants say that the object was the ultimate object of the union, to wit, among other things, the promotion of the welfare of its members and the advancement of their rights and privileges as laboring men; or, if not that, the freeing of themselves from the competition of those not members of the union; or, if not that, and the object is to be brought into closer relation to the matters in controversy,

the compelling of "unfair" bosses to become "fair." The plaintiff finds the object sought in an attempt to punish him for his business dealings contrary to the wishes of the union, by the exaction from him of $100 as the price of his freedom from harassment in the marketing of his product.

These differences in the analysis of the situation disclosed by the record are more formal than vital. Their chief importance arises from the changed form which must be given to the discussion of the underlying questions involved, and the different use of terms which must be made according as one view or the other be adopted. For the purposes of our consideration, therefore, we may well assume, as did the court below, that the object sought by the defendants in what they confederated to do was some one of the more remote objects claimed by them, and that this object was a lawful one. This, of course, involves the transferring into the field of means that which would in the other view be regarded as an end, and the consideration of all that the defendants did in the accomplishment of its object as means to that accomplishment.

The question before us thus becomes narrowed down to the single inquiry as to whether or not the defendants in the pursuit of their object—whether it be regarded as their general welfare as laboring men, the diminution of outside competition, or the enlargement of their field of opportunity by increasing the number of employers of union labor only— used unlawful means. This question suggests the possibility of a wide range of inquiry, involving the consideration of important legal principles which have been much discussed, and upon certain of which there has been some divergence of opinion. The facts of this case, however, are such as to require from us the application of no principles which have not been long and well established, and but few of them.

The salient facts in the story spread upon the record are, that this defendant association, through their representative the defendant Butler, demanded of the plaintiff the payment to them of a sum of money, upon the threatened alternative

that if payment was refused he would, by their action in refusing to handle his product in their work then in progress, be annoyed and harassed in the enjoyment of the benefit of the market for that product which he had obtained, and in all probability be wholly deprived of that market. The action thus threatened was within the power of the defendants to take. The consequences which would flow to the plaintiff from it, if taken, were such as might well excite in him a reasonable apprehension of serious injury. To the pressure thus brought to bear upon him he yielded and paid the sum exacted.

There is nothing in the record to relieve this picture. It does not improve it to say that the defendants were seeking to enforce a penalty or to collect damages assessed. They had no right to inflict a penalty upon, or assess damages against, this man who owed them no duty through association in the membership of the union, by contract, or otherwise. The plaintiff owed them nothing. To overawe him into the payment of something, by means of threats of injury in their power to inflict and of such a character as to naturally arouse a reasonable apprehension of serious consequences to him, in the event of his refusal, was an act of the purest extortion—using that word in its widest meaning—and in the plainest violation of our statute, § 1296, of our decisions, and of the universally-accepted principles of the common law. *State* v. *Glidden*, 55 Conn. 46, 8 Atl. 890 ; *State* v. *Stockford*, 77 Conn. 227, 58 Atl. 769. The statement of what the defendants undertook to do easily discloses that this is not the ordinary case found in the books, involving the exercise by trade, capital or labor combinations, of claimed powers, in their struggles for success. These cases have not infrequently called for the determination of nice legal questions, and the application of doctrines which, while they might be pertinent to the present situation, are wholly unnecessary for the decision of the simpler question before us.

The most elemental principles of justice and right, which have by universal consent been adopted into the common

law, suffice for a conclusion that money cannot be lawfully exacted of a man in the manner here successful. We are aware of no case where in the progress of a labor or trade controversy a similar attempt to extort money as the price of forbearance from threatened injurious action has ever come before the courts, save that of *Carew* v. *Rutherford*, 106 Mass. 1, where the attempt is characterized as a species of annoyance and extortion which the common law has never tolerated.

It is attempted to justify the action of the union in its money demand, upon the proposition that as its members had the right to decline to handle the plaintiff's brick they had the right to waive the exercise of that right upon such conditions as they might impose. The proposition is, that money demanded and obtained as the price of forbearance from the commission of an act of injury—even when the commission of that act is held over the man to coerce and intimidate him into compliance with the demand—is lawfully obtained, if the threatened act was one which the threatener might lawfully do. Such a proposition could oftentimes be used to justify the vilest blackmailer, and is palpably unsound in that it ignores certain elements which may be present to convert the proceeding into a wrong or a crime. 28 Amer. & Eng. Ency. of Law (2d Ed.), 141.

It is further said that the action of the defendants was justified in the exercise of the rights of fair trade competition. If it be assumed that these journeymen bricklayers and this brick manufacturer, whose business touched each other only in that the latter sold brick to persons for whom the former worked, are to be regarded as trade competitors, so that the recognized doctrines applicable to such competitors are applicable to them, it yet remains that the means resorted to in this case would not be permitted.

There is no error.

In this opinion the other judges concurred.