STATE OF CONNECTICUT *v.* HAROLD BASSETT

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

548

Argued February 5—decided April 28, 1964

*Thomas B. Coughlin,* for the appellant (defendant).

*John F. McGowan,* assistant state's attorney, for the appellee (state).

COMLEY, J. The defendant, Harold Bassett, was found guilty by a jury on three counts, which alleged violations of General Statutes § 53-40, the blackmail statute, which is printed in the footnote.[1] From the evidence, the jury could find that during October, 1961, the defendant entered certain retail

[1] "Sec. 53-40. BLACKMAIL. Any person who, either verbally or by written or printed communication, maliciously threatens to accuse another of any crime or offense or, by such communication, maliciously threatens an injury to the person, property or reputation of another, with intent thereby to extort money or any pecuniary advantage whatever or with intent to compel the person threatened to do any act against his will, shall be imprisoned not more than ten years or fined not more than five thousand dollars or both."

establishments in the Danbury area and maliciously threatened to accuse the proprietors of the crime of violating the Sunday closing laws; General Statutes § 53-300; with the intent to extort money from them.

The defendant contends that he could not be convicted of the crime charged because his acts did not constitute a malicious threat within the meaning of § 53-40. In support of his argument, he quotes language in his brief which purports to be § 1296 of a 1908 revision, and he cites cases to the court in support of his interpretation of that language. There is, of course, no revision of 1908.

The language quoted by the defendant is, however, substantially similar to the language of § 1296 of the 1902 Revision, and the cases discussed by the defendant relate to that section, which is entitled "Intimidation; boycotting." Section 1296 was first enacted as part of chapter 92 of the Public Acts of 1878, entitled "An Act for the Protection of Employees and Employers," and this provision, which had been substantially retained as § 6358 of the 1918 Revision and § 6208 of the 1930 Revision, was repealed in 1939 by § 1442e of the 1939 Cumulative Supplement. The statute referred to by the defendant was thus wholly distinct in purpose and different in form from the blackmail statute. The blackmail statute was first enacted as chapter 47 of the Public Acts of 1887 in substantially the same form as it exists today in General Statutes § 53-40. The defendant's interpretation of the language of § 1296 of the 1902 Revision, in terms of the cases relating to that statute, has no relationship to the instant case, which involves the charge of blackmail only. So far as those cases discuss and define the word "threaten," they are consistent with the state's

claim that the defendant's conduct in this case could be so characterized. See *State* v. *McGee,* 80 Conn. 614, 616, 69 A. 1059; *March* v. *Bricklayers & Plasterers Union,* 79 Conn. 7, 13, 63 A. 291.

In the case of each of the three counts on which the defendant was convicted, the evidence showed that he entered a retail establishment and requested a sum of money from the proprietor for membership in an organization which he claimed was located in Milford and was attempting to abolish the "blue laws." Each of the three proprietors was shown a letter, dated September 27, 1961, which was on stationery of the Circuit Court for the third circuit in Danbury and was signed by the prosecuting attorney. This letter was addressed to persons not involved in the present case, and it warned them that, unless they desisted from selling merchandise on Sunday, they would be prosecuted. The first proprietor refused to pay the $200 demanded by the defendant and claimed that he was not violating any blue law. Thereafter the defendant lodged a complaint against him in the Circuit Court for violating the blue laws. The defendant told the second proprietor that he would file a complaint against him unless he paid $50 to join the Milford organization. On one Sunday, the defendant purchased a small amount of meat at the store, held up the bag in which it had been placed and remarked: "See what I purchased." This proprietor paid $25 to the defendant, and no complaint was lodged against him. The defendant told the third proprietor: "I can keep you open or close you up on a Sunday." The defendant demanded $50 for membership in the Milford organization and declared: "You are either with me or against me. If you don't pay $50, you will feel the consequences." This pro-

prietor refused to pay the defendant, who then lodged a complaint against her in the Circuit Court. In the case of each of the three counts, the defendant's acts constituted malicious threats within the meaning of § 53-40.

The defendant also contends that the court erred in excluding certain evidence. The excluded evidence concerned the defendant's activities prior to October, 1961, in connection with his alleged campaign in the General Assembly and elsewhere against the Sunday closing laws. The defendant also attempted to introduce evidence that the Sunday closing laws were enforced in a selective manner. The court has a wide discretion in its rulings on the relevancy of evidence. *Graham* v. *Houlihan,* 147 Conn. 321, 332, 160 A.2d 745; *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 143 A.2d 434. At times, the evidence offered may be relevant, but its relevance may be so slight and inconsequential that to admit it would distract attention which should be concentrated on other evidence which bears directly on vital points. *State* v. *Wade,* 96 Conn. 238, 248, 113 A. 458; *State* v. *Sebastian,* 81 Conn. 1, 4, 69 A. 1054. The evidence excluded by the court concerning the defendant's earlier activities in connection with the blue laws and the alleged selective enforcement of these laws would have had little, if any, probative value on the question whether he violated § 53-40 of the General Statutes.

There is no error.

In this opinion the other judges concurred.