STATE OF CONNECTICUT *v.* MICHAEL MASTROPETRE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and RUBINOW, Js.

Argued April 6—decision released August 1, 1978

*Jerrold H. Barnett,* public defender, with whom, on the brief, was *Ellen B. Lubell,* assistant public defender, for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John Kelly,* assistant state's attorney, for the appellee (state).

Loiselle, J. By information dated December 31, 1974, as supplemented by a bill of particulars, the defendant was charged with rape in the first degree in violation of General Statutes § 53a-72.[1] Specifically, the state alleged that the defendant engaged

---

[1] This provision has since been repealed. In its place is General Statutes § 53a-70, defining sexual assault in the first degree.

in sexual intercourse with the complainant by forcible compulsion at about 8 p.m. on December 27, 1974. He was convicted by a jury and, from the judgment rendered, he has appealed to this court.

The defendant claims that the court erred in three respects: (1) in ruling that the complainant, on cross-examination, need not respond to the question of whether she had had sexual relations with any man prior to the alleged rape; (2) in its charge on the element of forcible compulsion; and (3) in charging that the defendant's interest in the outcome of the case was a factor to be considered in determining the credibility to be given his testimony.

## I

The defendant's first claim must be viewed within the trial context. On direct examination, in response to the question of whether the defendant had achieved an orgasm, the complainant answered, "I think so." On cross-examination, the defense counsel asked the complainant whether or not she was sure about this. The complainant answered that she was not, whereupon she was asked whether she had had sexual relations before that night. The complainant responded, "With him? No." To the further question, "With anyone else?" she stated, "That has nothing to do with this. Why should I answer that?" The court agreed that the complainant need not answer the question. Defense counsel objected, claiming, "Your Honor, I think there is a medical justification for that. A medical report that will be indicated and has a bearing on that. It also has a bearing on whether or not she knows what a climax is." The court reiterated its ruling and an exception was noted.

The defendant points first to the fact that the court's ruling was made in the absence of any objection by the state's attorney, likening the situation to that outlined in *State* v. *Gionfriddo,* 154 Conn. 90, 95, 221 A.2d 851 (1966). In the *Gionfriddo* case, however, the court emphasized that the "repeated interruptions and rebukes of counsel [by the judge] in the presence of the complainants then on the witness stand could only have the effect of repressing counsel's attack on the credibility of the witnesses." Id., 97. No such repeated intervention is apparent in this case. The judge's ruling followed an objection by the witness, and the court was acting well within its power to rule on the objection.

The defendant claims that the evidence of the complainant's prior sexual history was relevant on two grounds, the first relating to the issue of whether the complainant consented to intercourse with the defendant. The defendant reasons that although he denied having had any sexual contact with the complainant, since nonconsent is an essential element of the crime of rape the issue of consent was necessarily in the case. Noting that there is a split of authority as to whether such evidence is admissible on the question of consent, the defendant urges this court to adopt the view favoring its admissibility.[2]

It should first be noted that the defendant, at trial, failed to interpose this ground for the admissibility of the testimony sought. Practice Book, 1963, § 226.

[2] The defendant points to no cases of this court permitting such evidence, nor has our research led to the discovery of any state cases espousing such a rule of admissibility. The defendant's reliance on *State* v. *Rivers,* 82 Conn. 454, 457, 74 A. 757 (1909), is misplaced. In that case, the court specifically noted that consent was not an element of the crime charged (statutory rape) and that evidence of prior "unchastity" was inadmissible on that issue. Id., 457–58.

Ordinarily a claim for the admissibility of evidence not made at trial provides no basis for review by this court. See, e.g., *Cicero* v. *E.B.K., Inc.,* 166 Conn. 490, 497–98, 352 A.2d 309 (1974) ; *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 308, 114 A.2d 205 (1955). In view, however, of the defendant's claim that the court's ruling excluding this testimony violated his right of confrontation as guaranteed by the sixth and fourteenth amendments of the United States constitution, the claim will be reviewed.

General Statutes § 53a-72 defines rape in the first degree as "sexual intercourse with a female: (1) By forcible compulsion." "Forcible compulsion" is defined to mean "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person . . . ." General Statutes § 53a-65 (8). The statute does not delineate "nonconsent" as a distinct element. Rather, if "forcible compulsion" as defined by the statute is proven beyond a reasonable doubt, then a lack of consent is implicit. See General Statutes § 53a-66.

In the present case, the state offered evidence of "forcible compulsion." The defendant denied that he had had sexual relations with the complainant at all. Thus, consent was not truly an issue in the case. Under such circumstances, the vast majority of courts exclude evidence of a complainant's prior sexual history on the issue of consent. See, e.g., *Caldwell* v. *State,* 276 Md. 612, 349 A.2d 623 (1976) ; *Shay* v. *State,* 229 Miss. 186, 90 So. 2d 209 (1956) ; *State* v. *Sims,* 30 Utah 2d 357, 517 P.2d 1315 (1974) ; see also Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum.

L. Rev. 1, 57 n.338 (1977); Rudstein, "Rape Shield Laws: Some Constitutional Problems," 18 Wm. & Mary L. Rev. 1, 6–7 (1976).

Even in the absence of an "alibi" defense, the question proffered by the defendant was, in our opinion, irrelevant to the issue of consent. As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. " 'One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.' " *State* v. *Lombardo,* 163 Conn. 241, 243, 304 A.2d 36 (1972). The fact that a complaining witness may have consented to sexual relations with others before does not, without more, tend to establish that consent was given on the occasion in question. See Ordover, "Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity," 63 Cornell L. Rev. 90, 93–96 (1977). Further, evidence which is inconsequential tending to distract attention from the real issue should be excluded; *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969); *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 (1964); as should evidence which would be of greater prejudicial effect than probative value. See *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 (1973), cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219. Under this reasoning, testimony focusing on the complainant's prior sexual relationship was, on the issue of consent, properly excluded.[3]

[3] Over half of the states have enacted "rape shield" statutes, restricting the use of evidence respecting the complainant's sexual history. Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum. L. Rev. 1, 32 (1977). These statutes

The defendant argues, however, that even if the question was not admissible as tending to establish consent, it was admissible on the issue of the complainant's credibility. Again, the defendant did not explicitly raise this ground of admissibility at the trial. The defendant made some vague mention of a "medical report" which he now seeks to tie into a claim of credibility. For the reasons mentioned above, we will address the claim, which contains, in fact, two issues: (1) whether the question was admissible to impeach the witness, and (2) whether it was admissible to clarify the source of semen found in the complainant on the night of the alleged crime, as revealed in a medical report later admitted into evidence.

In *State* v. *Rivers,* 82 Conn. 454, 458, 74 A. 757 (1909), this court determined that "courts may properly in [rape] cases permit the accused to inquire on cross-examination as to particular acts of immorality and unchastity of the complainant either before or after the date of the alleged assault, which tend to show that such witness is unreliable and unworthy of credit." As applied to the particular facts of the case, the general principle set forth takes on a narrow aspect. In the *Rivers* case, the complaining witness had, in effect, testified on direct examination that she had been chaste prior to the time of the assault. Id., 458. Under such circumstances, the defendant was clearly entitled to challenge the assertion on cross-examination. The general rule, however, is that evidence of prior sexual relations cannot be introduced to impeach a complaining witness' credibility. See, e.g., *People* v.

commonly exclude such evidence on the issue of consent. Rudstein, "Rape Shield Laws: Some Constitutional Problems," 18 Wm. & Mary L. Rev. 1, 10 (1976).

*Burrows,* 27 Cal. App. 428, 150 P. 382 (1915); 65 Am. Jur. 2d, Rape, § 86. See also comment, "The Rape Victim: A Victim of Society and the Law," 11 Willamette L.J. 36, 42 (1974). The manifest logic of this approach appears in *State* v. *Shields,* 45 Conn. 256, 260, 263 (1877), in which this court approved the court's charge that "[a] witness may be of low, depraved and lewd habits and still be competent and credible." Or, in more contemporary language, a witness' sexual conduct does not, of itself, reflect upon his or her credibility.[4]

The defendant, however, argues that the question was permissible in light of the later submission into evidence of a medical report revealing that semen was found in the complainant on the night in question and of medical testimony revealing that someone other than the defendant could have been the donor. The defendant's reasoning is correct: that is, had the defendant asked whether the complainant had had sexual relations with someone other than the defendant at any time within the two or three days prior to the assault, the question would have been admissible on the issue of whether the defendant was responsible for the semen, raising doubts as to the complainant's credibility. See, e.g., *State ex rel. Pope* v. *Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976); *State* v. *Elijah,* 206 Minn. 619, 289 N.W. 575 (1940); *People* v. *Conyers,* 86 Misc. 2d 754, 382 N.Y.S.2d 437 (1976). The defendant did not, however, ask this question, nor did he adequately apprise the court that the question he did ask was

---

[4] *Vogel* v. *Sylvester,* 148 Conn. 666, 675–77, 174 A.2d 122 (1961), seems to indicate that in an alienation of affections case, prior sexual conduct of a party may be relevant on the issue of credibility. That ruling, in any event, is not applicable to the present case.

directed at this point. See *State* v. *Hawkins,* 162 Conn. 514, 516, 294 A.2d 584 (1972), cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249.

Furthermore, the report and testimony to which the defendant refers in his brief were admitted into evidence *after* the question was asked. It is elementary that a "cross-examination as to the contents of a document and questions at least relating to, if not actually involving, the contents of the document should not be permitted unless the writing is in evidence." *Robinson* v. *Faulkner,* 163 Conn. 365, 373, 306 A.2d 857 (1972); *Shulman* v. *Shulman,* 150 Conn. 651, 662, 193 A.2d 525 (1963). The defendant does not claim that after this medical evidence was introduced he sought to question the complainant more particularly as to her sexual activity during the few days prior to the assault. Consequently, the claim made offers no basis for relief.

The defendant finally claims that the court's ruling barring his question as to whether or not the complainant had had sexual relations with anyone prior to the assault violated his right to confrontation as guaranteed by the sixth and fourteenth amendments of the United States constitution; *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); and by article first, § 8, of the constitution of Connecticut. *State* v. *Jones,* 167 Conn. 228, 232, 355 A.2d 95 (1974). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d

297 (1973). An evidentiary ruling excluding evidence submitted by the defense infringes to some extent on the defendant's right to defend, even if the ruling is technically in accord with accepted rules of evidence. In *Chambers* v. *Mississippi, supra,* the United States Supreme Court held that the state's "voucher" rule preventing the defendant from impeaching his own witness interfered with the defendant's right to defend when applied to the facts of the case. The court additionally held that the specific application of the hearsay rule similarly contravened constitutional rights. See also *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (application of state law aimed at preserving confidentiality of juvenile adjudications of delinquency violated the defendant's right to confrontation). In each of these cases, however, the excluded evidence was clearly relevant and material to a critical issue in the case. See also *State* v. *Annunziato,* 174 Conn. 376, 387 A.2d 566. As we have noted, the testimony which the court excluded was not of such a character. The defendant's right to confront witnesses against him is not absolute, but must bow to "other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi, supra,* 295. Such interests are implicit in a trial court's accepted right, indeed, duty, to exclude irrelevant evidence; see *State* v. *Reed,* 174 Conn. 287, 299–300, 386 A.2d 243 (1978); or evidence which, if admitted, would have a greater prejudicial than probative effect. See, e.g., *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 (1973). The defendant's constitutional right to cross-examination was not infringed upon by the court's ruling excluding testimony of the complainant's prior sexual history under the facts of this case.

We are not confronted with the question of whether a ruling of the court excluding testimony to counter or explain the medical evidence pertaining to semen found in the complainant would contravene the defendant's claimed right to cross-examination. As this court has previously noted, a defendant's right to confront and cross-examine witnesses against him is not infringed if the defendant fails to pursue a line of inquiry open to him. See *State* v. *Reed,* supra, 300. The test is whether the *opportunity* to cross-examine existed, not whether full use of such opportunity was made. *State* v. *Jones,* supra, 233. In the present case, the defendant failed to ask the question he now claims he was precluded from asking. Such a failure cannot provide the basis for a claim that he was deprived of his right to confront his accusers.

## II

The defendant next claims that the court's charge on "forcible compulsion" was not adequate in that it failed to provide the jury with the guidance necessary to make a determination on this element of the crime charged. The defendant agrees that the court recited several times the elements of forcible compulsion as defined by General Statutes § 53a-65 (8), but argues that the element of resistance was not adequately covered. Relying primarily on New York cases, the defendant urges this court to amplify the statutory definition of "forcible compulsion" to mean that no crime is committed unless the victim opposes the actor to the "utmost limit of her power." We cannot agree.

As this court has noted, the similarity of language existing between the New York and Connecticut penal codes does not compel a like construction. See

*State* v. *Jonas,* 169 Conn. 566, 575, 363 A.2d 1378 (1975). In the present case, the legislature has provided a clear statutory definition of the term in question. It contains no words not commonly used, or words which might not be understood in their ordinary meaning. Consequently, the court need not expand upon them. *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977). The court's charge fairly and adequately covered the point raised, tracking the actual language of the statute and emphasizing its crucial aspects. *State* v. *Jones,* 173 Conn. 91, 96, 376 A.2d 1077 (1977).

It is further worthy of note that this court has consistently refrained from applying the "utmost resistance" test in rape cases. See *State* v. *Esposito,* 122 Conn. 604, 607, 191 A. 341 (1937); *State* v. *Long,* 72 Conn. 39, 44, 43 A. 493 (1899); *State* v. *Shields,* 45 Conn. 256 (1877). The defendant argues that these cases came under the common-law definition of rape as encompassed in former General Statutes § 53-238 and that under the code definition "a different type or degree of force was introduced." While this may be true, we cannot agree that the definition encompassed in General Statutes § 53a-65 (8) requires or even permits this court to apply a test long since abandoned in the majority of those jurisdictions which once applied it. See Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum. L. Rev. 1, 57 n.338 (1977).

## III

The defendant's final claim is that the court committed plain error by charging: "In weighing the testimony [the defendant] has given you, you should apply the same principles by which the testimony of other witnesses . . . [is] tested and this necessarily

involves a consideration of his great interest in the outcome of this case. You should consider the importance to him of the outcome of the trial just as you will consider the interest of any other witness." The defendant argues that when the credibility charges are viewed as a whole, emphasis was heavily laid upon the defendant's interest in the outcome of the trial as a factor to be considered, while as to the complainant's credibility the jurors were reminded that her constancy of accusation was a factor to be weighed.

The defendant, having failed to except properly to this charge, argues that the claim should be reviewed under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), which permits review of a newly claimed error "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Because of the centrality of credibility in this case, we will address the claim.

As has often been stated, " '[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' " *State* v. *Reed,* supra, 304–305; *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977). The test to be applied is whether, when read as a whole, the charge presents the case to the jury in such a way that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 645 (1974).

A review of the charge in its entirety does not sustain the defendant's claim. In referring to the

defendant's interest in the outcome of the case, the court with particular care couched the reference within a context of its similarity to weighing the credibility of all the witnesses. The situation is not unlike that addressed in *State* v. *Guthridge*, 164 Conn. 145, 151, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186, in which this court approved a charge on the defendant's interest in the outcome of the case as a factor to be considered in weighing the credibility to be accorded his testimony. The principles reiterated and cases cited to support such a charge in the more recent case, *State* v. *Bennett*, 172 Conn. 324, 335–37, 374 A.2d 247 (1977), require no further elaboration. The court did not err in its charge.

There is no error.

In this opinion COTTER, C. J., LONGO and RUBINOW, Js., concurred.

BOGDANSKI, J. (dissenting). I would find error in the trial court's charge on the defendant's testimony and credibility.

The defendant in this case testified on his own behalf. Thereafter the court charged the jury as follows: "In weighing the testimony [the defendant] has given you, you should apply the same principles by which the testimony of other witnesses . . . [is] tested and this *necessarily* involves a consideration of his *great interest* in the *outcome* of this case. You should consider the importance to him of the outcome of the trial just as you will consider the interest of any other witness. An accused person having taken the witness stand comes before you just like any other witness and is entitled to the same consideration and must have his testimony

measured by the same tests as applied to other witnesses *including, particularly,* his *interest* in the *verdict,* which you may render." (Emphasis added.)

A defendant is presumed innocent until proven guilty; *Coffin* v. *United States,* 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481; *Deutch* v. *United States,* 367 U.S. 456, 471, 81 S. Ct. 1587, 6 L. Ed. 2d 963; and if he does not testify, no comment can be made upon his failure to do so. *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106. The charge in this case placed a penalty on the defendant's decision to testify by relegating his assertion of innocence to a less credible category of testimony than that of the complaining witness. By creating such a circumstance, the charge under consideration substantially undermines the presumption that the accused is innocent by permitting the jury to attribute a motive to the defendant that can only attach if he is indeed guilty as charged. "[T]he accused's right to a fair trial in a fair tribunal is the very foundation of due process. . . . 'Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749; *Estes* v. *Texas,* 381 U.S. 532, 543, 85 S. Ct. 1628, 14 L. Ed. 2d 543." *Aillon* v. *State,* 168 Conn. 541, 546–47, 363 A.2d 49. To single out the defendant for exercising his right to testify is equally as repugnant as commenting on the exercise of his right to remain silent.

The better rule is to limit the charge to a general statement of the elements by which all witnesses' testimony should be weighed and not to single out

the defendant's testimony as worth less than that of any other witness. See *State v. Bennett*, 172 Conn. 324, 338–40, 374 A.2d 247 (Bogdanski, J., dissenting); *State v. Jonas*, 169 Conn. 566, 578–80, 363 A.2d 1378 (Bogdanski, J., concurring and dissenting); see, e.g., *United States v. Brown*, 453 F.2d 101, 107 (8th Cir.), cert. denied, 405 U.S. 978, 92 S. Ct. 1205, 31 L. Ed. 2d 253; *Garvin v. State*, 255 Ind. 215, 217–22, 263 N.E.2d 371; *State v. Bester*, 167 N.W.2d 705, 706–10 (Iowa); *Hall v. State*, 250 Miss. 253, 265–67, 165 So. 2d 345; *State v. Finkelstein*, 269 Mo. 612, 618–22, 191 S.W. 1002; *Graves v. State*, 82 Nev. 137, 138–42, 413 P.2d 503; *Stewart v. State*, 484 S.W.2d 77, 79 (Tenn. Crim. App.); and cases cited at 85 A.L.R. 577; see also *Bryson v. State*, 291 So. 2d 693 (Miss.); *State v. Bruyere*, 110 R.I. 426, 293 A.2d 311.

I would therefore find error, set aside the judgment and order a new trial.