STATE OF CONNECTICUT *v.* STEPHEN P. CASSIDY III
(3039)

HULL, BORDEN and SPALLONE, Js.

Argued November 15, 1984—decision released March 12, 1985

*Richard T. Meehan,* for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BORDEN, J. The defendant was tried by a jury on an information charging him with one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95, four counts of sexual assault in the first degree in violation of General Statutes § 53a-70, and one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The trial court submitted to the jury only three counts of sexual assault in the first degree, along with the counts of first degree unlawful restraint and third degree assault. He was convicted of two counts of sexual assault in the first degree, and of the single counts of unlawful restraint

in the first degree and assault in the third degree, but acquitted of one count of sexual assault in the first degree. The defendant appealed, claiming that the court erred in altering the information, in denying his motions for judgment of acquittal and for a new trial, and in partially denying his motion to offer evidence of prior sexual conduct of the victim. We find no error.

The information arose out of an incident occurring on February 20, 1983. The jury could reasonably have found the following facts: The victim had previously been acquainted with the defendant, with whom she had engaged in sexual relations one or two times prior to the evening in question. Early in the morning hours of February 20, 1983, the victim went to a bar with a friend, where she saw the defendant. She accompanied him and some of his friends to an after-hours bar. They stayed there briefly and then went to the defendant's house. The victim went upstairs to the defendant's bedroom, undressed and got into the bed. She was, at that point, willing to have sexual relations with him.

At this stage in the events, the victim's and the defendant's recollections diverge. The victim recounted as follows: After she was in the bed, the defendant, who was undressed, yelled, "[l]ady, you came here to get fucked and that's exactly what you are going to get. I'm going to fuck you until you can't stand up." He then lunged at her and forced her to submit to vaginal intercourse. She attempted to leave the room but the defendant grabbed her, turned her around, punched her in the mouth and threw her on the bed on her stomach. After he tied her arms behind her, gagged her, and forced her head down into the bedding, the defendant forcibly performed anal intercourse on her. He then offered to untie and ungag her if she would do everything he said. She assented because she did not want to be hit anymore. After untying her wrists and tak-

ing the gag out of her mouth, the defendant again forcibly had vaginal intercourse with her and forced her to perform oral sex with him. Throughout the incident, the defendant called her obscene names and, in her estimation, acted "[l]ike a crazy person." The defendant then told her that she had two seconds to put her clothes on and leave or he would kill her. She quickly put on some of her clothes; the defendant got her coat and, pushing her out the door, said he never wanted to see her again and threatened to kill her if she called the police. She left the house and, after unsuccessfully attempting to get neighbors' help, flagged down a car which happened to be driven by a police officer. He took her to the police station. She was later taken to a hospital and treated for injuries.

The defendant's account was as follows: After the victim got into the bed, the defendant, still clothed, got into the bed with her. She proceeded to undress him and had oral sex with him; he then performed oral sex with her. She laid on her back and they had vaginal intercourse. She then asked if she could tie him up. He said no but asked if she would like to be tied up. She consented, and he tied her hands loosely in front of her with her stockings. They had vaginal and anal intercourse while the complainant's hands were tied. Then, after resuming vaginal intercourse, the complainant's "whole attitude changed . . . like she didn't consent to what we were doing." She started getting hysterical, screaming about her husband who was killed in Vietnam. She said she "shouldn't be doing this," and that she wanted to die and wanted to be with her husband. She untied her hands and started swinging at the defendant. He tried to get her off of him and slapped her. She fell onto the bed. The defendant got up, told the victim to put her clothes on and get out of his house, and went into the bathroom. When he returned to the bedroom, she was gone.

I

The defendant's principal claim on appeal arises from the exclusion of certain evidence by the trial court. Prior to trial, the defendant moved, pursuant to General Statutes § 54-86f,[1] to offer evidence of the complainant's prior sexual conduct. The court permitted evidence of the prior sexual conduct between the defendant and the complainant but refused to admit evidence of a sexual encounter between the victim and another man, who testified in the absence of the jury as part of the defendant's offer of proof. This testimony was to the effect that she and he had gone to her home together about a year before the night in question. They had sexual relations, during which she began "going crazy" and screaming about her husband who was killed

---

[1] General Statutes § 54-86f, as amended by Public Acts 1983, No. 83-113, provides as follows: "ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the prior sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her prior sexual conduct, or (3) evidence of prior sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

in Vietnam. The witness told her to forget about it and went to sleep. Nothing eventful happened for the rest of the night. The next morning she showed him pictures of her husband.

The trial court excluded this testimony in the absence of an offer of proof by the defendant that the victim made a prior false complaint of sexual assault. The defendant argues that the evidence should have been admitted to show a pattern of conduct by the victim, and because it was highly relevant, probative and essential to the defense. He claims that applying the statute in this case violated his constitutional rights of confrontation and to present witnesses in his own behalf. We disagree.

Statutes such as General Statutes § 54-86f, commonly known as rape shield statutes, have been enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum. L. Rev. 1, 56–57 (1977). Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harrassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. See id., 54. Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. Id., 56. The state's interests are substantial, but cannot by themselves outweigh the defendant's competing constitutional interests. See *Davis* v. *Alaska,* 415 U.S. 308, 320, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). The United States Supreme Court has looked to the facts and circumstances of the particular cases

before it when determining if the state's interests in excluding evidence must yield to those interests of the defendant. See, e.g., *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978); *State* v. *Patnaude,* 140 Vt. 361, 369, 438 A.2d 402 (1981). Likewise, we must analyze the defendant's constitutional claims in light of the facts of this particular case.

Under General Statutes § 54-86f, which has not been previously interpreted, evidence of the victim's prior sexual conduct is inadmissible unless the trial court determines from an offer of proof at a hearing that it fits into one of the statute's exceptions. The defendant's argument focuses on exception (4) of § 54-86f, which permits evidence of prior sexual conduct if it is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights."[2]

This statute directs the court to examine the defendant's constitutional rights, implicating both his sixth amendment right to confront witnesses and his fourteenth amendment due process right to call witnesses on his own behalf. See *Chambers* v. *Mississippi,* supra, 294. The record does not make clear that the defendant sought to introduce this evidence for the purpose of cross-examining the victim,[3] but it was implicitly suggested that, if it were allowed, the defendant would have used it in cross-examination of her. This sugges-

---

[2] See footnote 1, supra.

[3] The defendant did not specifically request that he be allowed to cross-examine the complainant about this evidence. Rather, when asked by the court why the evidence was offered, counsel stated only that it was offered to "back up" the defendant's story. The topic was not raised again during cross-examination of the complainant, having already been precluded by the trial court's prior ruling. There can be no doubt, however, that if the testimony were allowed, the defendant would have questioned the complainant about it on cross-examination.

tion, combined with the broad mandate of the statute to analyze the defendant's *constitutional* rights, causes us to consider the defendant's claim that his confrontational right was violated, although that claim was not distinctly raised at trial.

By attempting to show that the victim's conduct with another man was similar to her conduct with him, the defendant sought to bolster his credibility while diminishing hers. We conclude, nonetheless, that exclusion of this evidence did not violate the defendant's constitutional right of confrontation.

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska,* supra, 316; *State* v. *Esposito,* 192 Conn. 166, 178–79, 471 A.2d 949 (1984). " 'The constitutional standard [for cross-examination] is met when defense counsel is "permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." ' " *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984).

The cross-examination of the victim was unrestricted; the defendant was permitted to question her in detail about the particular events and was permitted to introduce evidence of her prior consensual sexual conduct with him. The victim's privacy interest and the state's policy interests yielded in that instance to the defendant's sixth amendment rights so that he could effectively cross-examine her. *Davis* v. *Alaska,* supra, 320; see Rudstein, "Rape Shield Laws: Some Constitutional Problems," 18 Wm. & Mary L. Rev. 1 (1976) (statutes cannot absolutely bar evidence of prior sexual conduct without violating defendant's constitutional rights). The cross-examination, without the proffered evidence, was sufficient to provide facts from which the jury could

develop opinions and questions about the credibility of the victim. *State* v. *Asherman,* 193 Conn. 695, 721, 478 A.2d 227 (1984); but see *Davis* v. *Alaska,* supra, 318 (limited cross-examination inadequate to impeach witness' credibility); *State* v. *Heinz,* supra. The court need not allow additional impeachment evidence through another witness just because the defendant is not sure if he developed a large enough doubt in the jury's mind about the victim's credibility. See *State* v. *Asherman,* supra (inquiry into witness' bias not constitutionally required; trial court did not abuse its discretion in excluding it).

The court, in this case, was correct in noting that, unless the proffered testimony was to show that the victim previously made a false claim of sexual assault following the claimed similar, consensual sexual conduct, the evidence should be excluded. The relevant conduct was that between the defendant and the victim. Unless she had raised a false claim before, her conduct with another man had no bearing on her conduct with this defendant or on the credibility of her testimony in this case. The defendant was given adequate opportunity to cross-examine her, and the court properly excluded this evidence. *State* v. *Asherman,* supra.

The defendant's right to present witnesses in his own defense is also implicated, and similarly was not infringed. "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The defendant claims he had a right to present this evidence because it established a pattern of conduct by the victim, and it supported his defense of consent by showing another instance where the victim became irascible during a consensual sexual encounter.

In exercising the right to present witnesses in his own defense, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers* v. *Mississippi*, supra, 302; *State* v. *Mastropetre*, supra, 521. The constitution does not require that the defendant be permitted to present every piece of evidence he wishes, although exclusionary rules of evidence cannot be applied "mechanistically" to deprive the defendant of his rights. *Chambers* v. *Mississippi*, supra. If the proffered evidence is not relevant, however, the defendant's right to confrontation is not affected and the evidence was properly excluded. *State* v. *Vaughn*, 448 So. 2d 1260 (La. 1983), on rehearing, 448 So. 2d 1266, 1267 (La. 1984); *State* v. *Patnaude*, supra; see General Statutes § 54-86f (4); *State* v. *Mastropetre*, supra, 517.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. ' " 'One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.' " ' *State* v. *Lombardo*, 163 Conn. 241, 243, 304 A.2d 36 (1972)." *State* v. *Mastropetre*, supra, 517. The fact that about one year before the alleged assault occurred, the victim began a sexual episode with another man, became upset and changed her mind because of her feelings about her dead husband, does not tend to establish that, on this night, the victim became hysterical about her husband, screamed that she wanted to die and be with her dead husband, and struck the defendant. Particularly since there was also evidence of more recent nights which the defendant and the victim had spent together with no similar behavior by her, the defendant's version would not have been made more probable by this evidence.

One cannot logically infer that the victim acted in the manner described by the defendant simply because of a somewhat similar incident one year beforehand. See *State* v. *Esposito,* supra, 172. The evidence, therefore, was legally irrelevant and was properly excluded without denying the defendant his constitutional rights.

Moreover, one similar instance is not sufficient to prove a pattern of conduct. *State* v. *Patnaude,* supra, 379. Even in states which expressly permit evidence of prior sexual conduct to establish a pattern of conduct, evidence of one sexual encounter is not enough to do so. See, e.g., *Hodges* v. *State,* 386 So. 2d 888, 889 (Fla. Dist. Ct. App. 1980). Commentators who advocate allowing evidence of patterns of similar behavior to establish a defense also suggest that "[a] single past act is not probative of present acts; only related *patterns* of behavior should be admissible." (Emphasis added.) Ordover, "Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity," 63 Cornell L. Rev. 90, 114–15 (1977); see Berger, "Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom," 77 Colum. L. Rev. 1, 59–60 (1977). No other instances of similar conduct were offered; the instances of prior sexual conduct between the defendant and the victim showed no pattern of the same type of behavior. The evidence was properly excluded, therefore, as insufficient to provide a basis for the inference that the victim acted as claimed by the defendant.

In holding that this single past instance of the victim's sexual conduct was properly excluded, we do not suggest that such evidence is never relevant or admissible. To be admissible, however, such evidence must fulfill the requirements of the statute within the context of the facts and circumstances of the case in which it arises. See *State* v. *Vaughn,* supra, 1268; see gener-

ally annot., 94 A.L.R.3d 257. The evidence sought to be introduced in this case did not meet those requirements.[4]

## II

The defendant's second claim is that the court impermissibly instructed the jury on only three, rather than four, counts of sexual assault, and that the court improperly amended the information by writing "vaginal," "anal," and "oral" next to each count. We disagree.

The defendant's argument that the jury instructions were improper is without merit. The defendant submitted a request to charge to the court but his request omitted any charge regarding the counts of sexual assault. After the charge, the defendant took no exception, although the state excepted on exactly this point. "The purpose of requiring an attorney to except is not merely formal. An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial." *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1984). The failure to except without an indication of the deprivation of a constitutional right bars appellate review. *State* v. *Jackson,* supra. Furthermore, removing one count from the scope of the jury's guilt-assessing ability could only inure to the defendant's benefit, making his challenge to it inapt.

The original information charged the defendant with four counts of sexual assault. No bill of particulars was

---

[4] Before admitting evidence of prior sexual conduct, which otherwise meets the requirements of one of the statutory exceptions, General Statutes § 54-86f also requires balancing the probative value of the evidence with its prejudicial potential. We find this balancing test inapplicable to evidence fulfilling the requirements of subsection (4) because, if the defendant's constitutional rights would be violated by the exclusion of the evidence, no amount of prejudice to the victim could require its exclusion.

requested by the defendant. After an in-chambers precharge conference, the regularity of which is not challenged; *State* v. *Jones,* supra, 89 n.13; the court announced its decision to charge the jury on only three counts of sexual assault. Thereupon, the court charged the jury on one count of unlawful restraint in the first degree, one count of assault in the third degree, and three counts of sexual assault in the first degree. After the jury was excused, but before the jury began its deliberations, the court discussed with counsel the problem of the unparticularized information.[5] After receiv-

---

[5] The discussion was as follows:

"The Court: All right. Now gentlemen, I have a problem. As you know, the Information just has the three counts and I'm wondering if—again, it's up to you—whether we could label these just in ink, 1, 2, 3 and 4 in the margin as to the first one—in other words, anal, oral, fellatio, so that—

"Mr. Benedict: I have no—

"The Court: I don't know how they will render their verdict under the Information as it is.

"Mr. Benedict: As far as the State is concerned, it could be done that way or the Clerk, when she goes through the verdict, can simply ask as to the first count, and she can name a specific. Either way.

"The Court: Mechanically, procedurally—

"Mr. Benedict: It's when they come out for a verdict, it's mechanic.

"The Court: They could find him guilty of all, not guilty of two or not guilty of one and not guilty to any of them. I think there has to be some sort of specificity, it seems to me. Mr. Kanasky?

"Mr. Kanasky: I agree. I thought about it last night, your Honor, and I was thinking basically on interrogatory basis. I just dropped it and didn't consider it again this morning. I think there has to be some distinguishment. I gather it would be easier for the jury in their own mind, although I certainly don't want to decide what order the Court will put them down.

"The Court: I don't have any preference at all in my own mind.

"Mr. Kanasky: I think it would be proper to indicate on the counts.

"The Court: Mr. Benedict?

"Mr. Benedict: That's probably simpler. Just in the margin next to each of the counts.

"The Court: What I was thinking, I think the order in which I charged, the order of the statute; I think vaginal, anal, fellatio.

"Mr. Kanasky: Yes, your Honor.

"Mr. Benedict: That's acceptable.

"The Court: I think that's the way it's listed; vaginal, anal, oral. All right.

ing acquiescence by both counsel, the court wrote next to each count of sexual assault one type of the claimed sexual acts so that the jury could relate each count to one of the acts.[6] The jury then began deliberating, taking the modified information with them.

The defendant argues that the court's actions with regard to the information usurped the function of the state's attorney to prepare the allegations of an information and the jury's function to be the sole trier of fact. This argument is without merit.

The defense counsel participated in remedying the perceived ambiguity of the information and specifically consented to the court's informal remedy. See footnote 6, supra. "An appellant cannot ordinarily claim error in the action of the trial court which he has induced." *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); see also *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982). The defendant's participation in and agreement to the informal specification of charges prohibits him from challenging it at this time.[7] *State* v. *Jones,* supra, 88–89.

---

Gentlemen, do you want to look at that in the margin to the left on the Information?

"Mr. Kanasky: No problem, your Honor.

"The Court: All right."

[6] The court explained this to the jury as follows: "All right. Ladies and gentlemen, first of all, with the consent of counsel, to make your job easier on this Information that you will have in hand, to the left of each of the sexual assault charges you will see a word and a second count says vaginal and third count anal and fourth count fellatio. So that in considering these charges we'll know when you come back what your verdict is with respect to these various claimed acts. That's the way in which you can consider each count related to the claimed act of sexual intercourse. I think that's clear. Counsel have agreed to that being written."

[7] The defendant urges this court to review this claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because his counsel did not appreciate the problem with the information, and the defendant was deprived of his constitutional rights to a trial by jury and a fair trial. The court's actions, however, did not remove the case from the jury's province or effectually direct a verdict, as the defendant suggests. Because the record does not

The defendant argues alternatively that he should only have been tried on one count of sexual assault, on the theory that only one act of sexual assault was alleged, albeit one involving several acts of sexual intercourse. This argument was rejected under the predecessor to General Statutes § 53a-70. *State* v. *Frazier,* 185 Conn. 211, 229, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). We reject it under General Statutes § 53a-70 as well.

The defendant suggests that while the legislative intent of the repealed statute was to punish each individual act of assault separately, the legislature, by enacting the current statute, intended only to punish the total course of conduct as one offense.[8] As under the prior statute, however, "each assault upon the victim involved a separate act of will on the part of the defendant and a separate indignity upon the victim. . . . [T]he legislative intention was that each assault should be deemed an additional offense." Id., 230. To interpret the statute otherwise would be to strip it of all its sense. "[T]he application of common sense to the language of a penal law is not to be excluded in a way which would involve absurdity or frustrate the evident design of the lawgiver." *State* v. *Belton,* 190 Conn. 496,

---

support the defendant's claim that his constitutional rights were infringed, as required by *State* v. *Evans,* supra, 70, we do not reach it. See *State* v. *Taxiltaridis,* 2 Conn. App. 617, 620–21, 481 A.2d 98 (1984).

[8] The statute construed in *State* v. *Frazier,* 185 Conn. 211, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982), was part of a series of sections of the penal code which distinguished between sexual misconduct, several degrees of rape and deviate sexual intercourse, and sexual contact. General Statutes (Rev. to 1975) §§ 53a-65 through 53a-80. These sections of the penal code were repealed or amended by Public Acts 1975, No. 75-619, which combined these various offenses into differing degrees of the single crime of sexual assault. General Statutes (Rev. to 1983) §§ 53a-65 through 53a-73a. The defendant was charged and convicted of sexual assault in the first degree under the code as amended by Public Acts 1975, No. 75-619.

506, 461 A.2d 973 (1983). "There is ample authority holding that each separate act of forcible sexual intercourse constitutes a separate crime. 1 Wharton, Criminal Law & Procedure (1957) § 304; 65 Am. Jur. 2d, Rape § 106. A different view would allow a person who has committed one sexual assault upon a victim to commit with impunity many other such acts during the same encounter." *State* v. *Frazier,* supra, 229.

The defendant's argument must also fail because Practice Book § 817 specifically states that "[n]o . . . information shall be dismissed merely for . . . multiplicity, duplicity or uncertainty, provided an offense is charged." The court properly charged the jury on three counts of sexual assault.

## III

Finally, the defendant argues that the verdict was inconsistent. The jury found the defendant guilty on two counts of sexual assault and not guilty on a third.[9] The defendant claims such a verdict is factually and legally inconsistent and cannot stand. We disagree.

"Consistency in the verdict is not necessary." *Dunn* v. *United States,* 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932); *State* v. *Martin,* 189 Conn. 1, 6, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); see also annot., 18 A.L.R.3d 259, annot., 16 A.L.R.3d 866. The United States Supreme Court has recently reiterated the *Dunn* rule, and stated that it rests on a "sound rationale" and should remain standing without exception. *United States* v. *Powell,* 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). We reject the defendant's argument that reviewability depends on a distinction between factual and legal inconsistency. We decline to make an

---

[9] The jury found the defendant guilty on the counts which the court had denominated as "vaginal" and "anal," and not guilty on the count marked "fellatio." See II, supra.

"individualized assessment," since that would involve either "pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Id., 469. We agree with the United States Supreme Court that arguably inconsistent verdicts are generally unreviewable by either the defendant or the state and that the principles of double jeopardy and res judicata do not require otherwise. Id.; see *Harris* v. *Rivera,* 454 U.S. 339, 346, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981). The defendant was "given the benefit of [his] acquittal on the counts on which [he] was acquitted, and it is neither irrational nor illogical to require [him] to accept the burden of conviction on the counts on which the jury convicted." *United States* v. *Powell,* supra, 69.

A review of the evidence indicates that it was sufficient for the jury reasonably and logically to reach the conclusions which it did. *State* v. *Manning,* 162 Conn. 112, 122–23, 291 A.2d 750 (1971). "[T]he many possible explanations for the acquittal on one charge[10] did not necessarily indicate that the jury had acted improperly in convicting the defendant on the other[s]." *State* v. *Martin,* supra, 7.

There is no error.

In this opinion the other judges concurred.

---

[10] For example, the jury may have believed that the complainant initially consented to having oral sexual intercourse with the defendant and later recanted her consent.