# STATE OF CONNECTICUT *v.* GARY LEE LAKE
## (15151)

Dupont, C. J., and Landau and Freedman, Js.

Argued September 25—officially released December 10, 1996

a result, *Troupe* does not apply to this case and, thus, the defendant's claim will not be addressed.

*Michael J. Melly,* special public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Mark Solak,* state's attorney, and *Vincent J. Dooley,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant, Gary Lee Lake, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[1] and unlawful restraint in the first degree in violation of General Statutes § 53a-95.[2] The jury returned a verdict of not guilty on a count of kidnapping in the first degree. General Statutes § 53a-92 (a) (2) (A). The defendant claims that the trial court's refusal to allow evidence of the victim's prior sexual conduct and its refusal to admit an exhibit into evidence during the cross-examination of a particular witness violated his constitutional rights. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the facts that follow. On August 25, 1993, the victim left work and went to the home of her brother, Paul, to visit with her

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

sister-in-law. Paul and the defendant arrived shortly thereafter. The victim agreed to go to a lounge with Paul and the defendant to discuss the defendant's relationship with the victim's sister, Linda, whom the defendant had been dating. The victim drove the defendant to his mother's house so that he could shower and change his clothes. They then went to the lounge and joined Paul, Linda, the defendant's brother Jerry and another man, who were sitting together at a table. The defendant became upset upon seeing Linda with his brother and remained agitated for most of the evening. The victim tried to ignore the defendant and the arguments at the table by speaking with other people in the lounge. The victim had only one drink, while the defendant had several.

When the victim wanted to go home to receive an expected telephone call, the defendant insisted on getting a ride home with her. An argument ensued, and the victim finally agreed to drive him home after she received her telephone call. When they reached the victim's apartment, the defendant followed the victim inside, even though the victim had asked him to wait in the car. The defendant grabbed the victim around the throat and started choking her. The victim could hardly breathe and her body felt numb. The defendant dragged her up the stairs, smashing her body into the wall and screaming at her to shut up. He threw her on the couch in the living room. When the victim asked the defendant why he was doing this, he responded, "This is the only way I can pay your sister back" for being with his brother.

The telephone rang several times during the night, and each time it rang the defendant would choke the victim and shove her head into the sofa cushions so that she could not breathe. The victim thought, at one point, that the defendant would kill her, so she lay very still. The defendant, thinking he had actually killed her,

said, "Good, that's one fucking bitch down, now your sister's the next one."

The victim opened her eyes and the defendant grabbed her by the neck again. Then the defendant forced the victim to drink beer. When she resisted, the defendant told her, "I said drink the fucking beer. When they find you dead here, I'm gonna make it look like a suicide and that's why you were drunk." The defendant then drank several beers while the victim pretended to drink. The defendant again choked her and later threatened her with kitchen knives. The defendant dragged the victim upstairs and banged her head into a cabinet several times. He tried to open her bedroom door, but found it locked. He then dragged her into a bedroom, threw her on a bed, removed her clothing, and performed multiple acts of sexual intercourse, often choking and punching her in the process.

Afterward, the defendant dragged the victim downstairs to the living room, where he tied her wrist to his with a shoelace from one of her sneakers. He lay on top of her on the couch and fell asleep. While the defendant slept, the victim maneuvered herself out from under him and burned through the shoelace with a lighter she retrieved from an adjacent table. She then ran next door to her neighbor's house, where she called the police.

The defendant testified at trial that the sexual intercourse was consensual, that he and the victim had gone on dates prior to that night, and that the victim had asked him to tie her hands together prior to the sex act. He testified that he fell asleep on the couch and was surprised when the police came to pick him up the next morning.

I

The defendant first argues that the trial court incorrectly applied General Statutes § 54-86f,[3] commonly

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence

known as the rape shield statute, when it granted the state's motion in limine and refused to allow testimony regarding the victim's prior sexual conduct. The motion was made pursuant to § 54-86f and included both the charge of sexual assault and the charge of unlawful restraint. The defendant argues that the excluded evidence was so relevant and critical to his defense that its exclusion violated his sixth amendment right of confrontation of witnesses[4] and his fourteenth amendment due process right to call witnesses[5] on his own behalf under the United States constitution and his right under the Connecticut constitution to confront the witnesses against him.[6]

---

of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[5] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

[6] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

The evidence that the trial court excluded consisted of the testimony of two former boyfriends of the victim. A hearing was held out of the presence of the jury, as required by § 54-86f. The victim denied that she had suggested that the defendant tie her hands together during intercourse. She also denied that she had asked others to tie her up during sexual relations. The defendant testified that the sexual intercourse was consensual and that the victim "asked simply if I'd mind trying something new. . . . She asked that I'd tie her hands behind her back." He testified that he tied her hands together with a shoelace.

The first witness, who had lived with the victim for more than one year, testified that the victim had asked on more than one occasion to be subdued, tied up, or held down during sexual relations. He stated that this had not happened until they had been dating for four to six months and living together. He stated that while she occasionally asked to be spanked during sexual relations, she never asked him to strangle her or to bang her head against the wall. He stated that he never used shoelaces to tie her up, and she never accused him of raping her.

The second boyfriend, who lived with the victim for three or four years, testified that the victim "liked to be dominated." He stated that she had liked to be forced down and held by her hands during sexual relations, but he had never used anything to tie her down. He also stated that she did not ask him to dominate her until after they had known each other for a while and that she never asked him to beat or strangle her. He further testified that she never accused him of rape.

The trial court granted the state's motion in limine, noting that the evidence did not establish "the necessary repetition of unique behavior that would be required to show that this testimony is so relevant as to implicate

the defendant's constitutional right to confrontation."[7] The court further found that the testimony was not relevant to the counts of kidnapping and unlawful restraint because "this evidence is remote, again does not lend credence to a claim that this is repetitive, unique behavior on her part and . . . I'm convinced that the prejudicial effect on the victim would far outweigh the probative value of the evidence as it applies to the facts of this case."

## A

The state argues that this court should not review this claim because the defendant is raising arguments about this issue for the first time on appeal, and, further,

---

[7] The trial court stated, after hearing the testimony of the witnesses and oral argument, "We start out with the premise that you're asking me to do something that the rape shield statute directly prohibits, because you want me to introduce evidence of her sexual conduct with others as opposed to simply the defendant. . . . Now, there is a catch-all exception, which is sub[division] (4) of that statute, which allows the court to admit evidence otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . . [If] the court finds the evidence meets the requirement of § 54-86f (4), and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. So as the court sees it, at least as to [the sexual assault count], the issues are twofold . . . is this evidence of sexual conduct with another so relevant to a critical issue in the case that excluding it would violate the defendant's constitutional rights, and . . . does the probative value of this evidence outweigh the prejudicial effect it would have vis-a-vis the victim? After listening to the testimony of the witnesses, the court is convinced that there is little similarity between this prior conduct and the facts alleged in this case and the court has asked itself this question, is there an indication that the evidence indicates repetition of unique behavior, and I don't think that it did. . . . I don't think that [the testimony] established the necessary repetition of unique behavior that would be required to show that this testimony is so relevant as to implicate the defendant's constitutional right to confrontation. And I note further that . . . there's no evidence that on any of these prior occasions . . . the alleged victim made any charges . . . of rape. So for those reasons I'm going to find the proffered evidence would not be relevant to these issues, that it would not comply with the requirements of the rape shield law to admit it."

the defendant failed to request review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[8] The state is correct that during the hearing on the state's motion in limine the defendant did not claim that the evidence should be admitted under subdivision (2) of the rape shield statute. The defendant did, however, claim admissibility under subdivision (4) during that hearing. Thus, one of the defendant's claims that he raises on appeal was preserved, and the other was not.

We first discuss his unpreserved claim. In order to prevail on a claim raised for the first time on appeal, the defendant must show that "*all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. The last two conditions of *Golding*, however, are reached only if the first two conditions are met. The first two conditions relate to whether a claim is reviewable and the last two to the substance of the actual review. *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). Actual review, therefore, is available only if there is a record and the claim is constitutional in nature. Id. Section 54-86f provides in part that "no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, *provided the victim has testified on direct examination as to his or her sexual conduct . . . .*" (Emphasis added.) The victim did not testify on direct examination about her prior sexual

---

[8] The defendant did request such review in his reply brief.

conduct, although she did so at the rape shield statute hearing. See *State* v. *Butler*, 11 Conn. App. 673, 682–83, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 937 (1987) (testimony at rape shield statute hearing insufficient for subdivision [2]). The record here does not support the claim and we, therefore, do not grant review under *Golding* of the defendant's unpreserved claim that his proffered evidence was admissible under subdivision (2) of the rape shield statute.

The defendant's claim that the testimony should have been admitted under subdivision (4) of the statute, however, was properly preserved for appeal and, therefore, is reviewable.

B

Evidence of a victim's prior sexual conduct is inadmissible under § 54-86f unless one of the statutory exceptions is satisfied. *State* v. *Christiano*, 228 Conn. 456, 469, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); *State* v. *Rinaldi*, 220 Conn. 345, 354, 599 A.2d 1 (1991); *State* v. *Rothenberg*, 195 Conn. 253, 259–60, 487 A.2d 545 (1985). Section 54-86f was "enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. Berger, 'Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,' 77 Colum. L. Rev. 1, 56–57 (1977). Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. See id., 54. Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of

time on collateral matters. Id., 56." *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

The constitutional interests with which we are here concerned are the defendant's right to confront the witnesses against him, and the defendant's right to call witnesses in his own behalf. A court must examine the facts and circumstances of the particular case in order to determine whether the state's interest in excluding evidence should yield to the constitutional rights of the defendant. See, e.g., *Chambers* v. *Mississippi*, 410 U.S. 284, 302–303, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Cassidy*, supra, 3 Conn. App. 380.

Our rape shield statute "directs the court to examine the defendant's constitutional rights, implicating both his sixth amendment right to confront witnesses and his fourteenth amendment due process right to call witnesses on his own behalf. See *Chambers* v. *Mississippi*, supra, [410 U.S.] 294." *State* v. *Cassidy*, supra, 3 Conn. App. 380. Cross-examination is the principal method to test the believability of a witness and the truth of his testimony. The constitutional safeguard for cross-examination is met when defense counsel is permitted to expose to the jury facts from which the jurors can appropriately draw inferences and make conclusions as to the reliability of the witness.

The right to confront and cross-examine witnesses is not absolute. The areas and subjects of the examination must be relevant. In this case, the cross-examination of the victim was not restricted and the defendant was able to question the victim in detail about the events of the night about which she testified. He specifically asked her if she had asked the defendant to tie her up that night and she denied it. The defendant's cross-examination brought forth many inconsistencies in the victim's testimony and in the testimony of other wit-

nesses. He had, therefore, ample opportunity to test her credibility. The cross-examination, even without the excluded evidence, was sufficient to bring facts to the jury's attention that would affect the jury's opinion about the credibility of the victim. See id., 381–82. "The court need not allow additional impeachment evidence through another witness just because the defendant is not sure if he developed a large enough doubt in the jury's mind about the victim's credibility." Id., 382.

The exclusion of the witnesses' testimony also implicates the defendant's constitutional right to present witnesses in his own defense. "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

The defendant claims that he had a right to present the testimony of the victim's former boyfriends to establish a pattern of conduct of the victim and to support his defense of consent by showing other instances where the victim asked to be tied up or restrained during sexual relations. This claim is similar to the defendant's claim in *State* v. *Cassidy*, supra, 3 Conn. App. 382, where the defendant claimed "he had a right to present . . . evidence because it established a pattern of conduct by the victim, and it supported his defense of consent by showing another instance where the victim became irascible during a consensual sexual encounter."

The evidence the defendant in *Cassidy* sought to introduce consisted of testimony from another man that the victim "and he had gone to her home together about a year before the night in question. They had sexual relations, during which she began 'going crazy' and

screaming about her husband who was killed in Vietnam. The witness told her to forget about it and went to sleep. Nothing eventful happened for the rest of the night. The next morning she showed him pictures of her husband." Id., 378–79. The defendant sought to introduce this evidence in support of his contention that his sexual relations with the victim were consensual but afterwards her attitude changed and she began to become hysterical and screamed about her husband who had died in Vietnam. The defendant argued that this "evidence should have been admitted to show a pattern of conduct by the victim, and because it was highly relevant, probative and essential to the defense. He claim[ed] that applying the statute . . . violated his constitutional rights of confrontation and to present witnesses in his own behalf." Id., 379. We upheld the trial court's exclusion of the evidence under subdivision (4) of the rape shield statute.

In *Cassidy*, we considered the fact that only one person had corroborated the defendant's story and determined that one other sexual encounter did not constitute a pattern of behavior. Id., 384. The defendant could argue the opposite here[9] because there were two witnesses who would testify that the victim liked to be tied up or dominated during sexual relations. Only one stated, however, that the victim had asked him to tie her up. The other mentioned only holding her down. Further, neither witness testified to having beaten or strangled the victim during consensual sex; nor did the victim accuse either of them of sexual assault. Finally, both witnesses testified that the victim did not suggest engaging in such behavior until after several months when their relationship had become more solid.

Even if the testimony of the two witnesses would show a pattern of behavior of the victim as to her

---

[9] The defendant did not so argue.

behavior with them, that pattern does not extend to the defendant. The victim's testimony has one striking dissimilarity with the testimony of the two witnesses because she testified that the defendant tied her wrist to the defendant's wrist, not to her other wrist. Such restraint, therefore, was unrelated to the kind of restraint about which the defendant's witnesses would have testified. Additionally, the victim's sexual encounter with the defendant, even if the defendant's testimony is to be believed in its entirety, does not fall within the pattern of her behavior with the witnesses. According to the defendant, this was the first sexual encounter between the two and they did not live together. Further, sexual intercourse while being restrained at the request of a consensual partner might explain the remains of a shoelace around the victim's wrist, but would not explain the numerous bruises around the victim's neck and body, which were present in this case.

"In exercising the right to present witnesses in his own defense, the defendant 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' *Chambers* v. *Mississippi*, supra, [410 U.S.] 302 . . . ." (Citations omitted.) *State* v. *Cassidy*, supra, 3 Conn. App. 383. "The constitution does not require that the defendant be permitted to present every piece of evidence he wishes, although exclusionary rules of evidence cannot be applied 'mechanistically' to deprive the defendant of his rights. *Chambers* v. *Mississippi*, supra [302]." *State* v. *Cassidy*, supra, 383. If proffered evidence is not relevant, the defendant's right to present witnesses in his own behalf has not been affected and the evidence can properly be excluded.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. One fact is relevant to another fact whenever, according to the common course of events, the existence of the

one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Mastropetre*, 175 Conn. 512, 517, 400 A.2d 276 (1978). The fact that the victim had, on prior occasions with long-term boyfriends, asked to be restrained, is related to the defendant's defense that the victim had asked him to restrain her. The excluded evidence, therefore, has some relevance to the defendant's defense.

Although the evidence is related to the defendant's defense, we must next determine whether it should, nevertheless, be excluded because of its potential prejudicial effect. "Evidence should be excluded as unduly prejudicial: (1) where it may unnecessarily arouse the jury's emotions, hostility or sympathy; (2) where it may create distracting side issues; (3) where the evidence and counterproof will consume an inordinate amount of time; and (4) where one party is unfairly surprised and unprepared to meet it." *State* v. *Rinaldi*, supra, 220 Conn. 356. "The prejudice sought to be avoided through the rape shield statute extends, however, beyond those listed above. When balancing the probative value of evidence of a sexual assault victim's prior sexual conduct against its prejudicial effect on the victim, the court should also consider whether the evidence invades the victim's sexual privacy, whether it is unnecessarily harassing, and whether it will subject the victim to undue embarrassment." Id.

In this case, the testimony would have a prejudicial effect on the victim and would invade her sexual privacy. In addition, the evidence would produce collateral issues regarding the nature of the victim's prior sexual activities. We, therefore, conclude that the evidence should have been excluded because it was only minimally relevant and because it was unduly prejudicial.

## C

The defendant also claims that the excluded testimony should have been admissible as to the unlawful restraint count. The trial court ruled that it was not relevant to the unlawful restraint charge and that its prejudicial effect outweighed any probative value. Section 54-86f, on its face, states that evidence of the victim's prior sexual conduct is inadmissible "[i]n any prosecution for sexual assault under sections 53a-70, 53-70a, and 53a-71 to 53a-73a," unless one of the exceptions is met. Thus, the language of the statute does not include the crime of unlawful restraint. The question then becomes whether the statute should apply, as a matter of common law, beyond its designated language. See *State* v. *Kulmac*, 230 Conn. 43, 52, 644 A.2d 887 (1994).

In *Kulmac*, the defendant had been convicted of numerous counts of sexual assault and of risk of injury to a child. Id., 46–48. On appeal, the trial court was upheld in its ruling that the rape shield statute applied to the risk of injury counts "because offenses listed in the rape shield statute were included in the same prosecution as the risk of injury charges . . . ." Id., 52.

The *Kulmac* court considered the policies behind the rape shield statute, "to protect victims' personal privacy, to shield them from unnecessary harassment and embarrassment in court, and to encourage them to disclose sexual assault by reducing some of the deterrents to reporting"; id., 53; and determined that the same policies applied to a risk of injury charge as to a sexual assault charge. "C and K were specifically entitled to the protection of the rape shield statute for many of the charges tried in this case. We cannot accede to the argument that the policies promoted by the rape shield statute are as tightly linked to the particular statutory section as the defendant suggests. As victims

of multiple kinds of sexual abuse, C and K were within the class of witnesses that the rape shield statute contemplates. It is irrelevant that the prosecution for sexual assault included charges of risk of injury as well." Id., 54. The court went on to conclude as a matter of common law that the rape shield statute applies to prosecutions for risk of injury to a child under General Statutes § 53-21 if the prosecution also involves allegations of sexual assault under the statutory sections included in the statute. Id.

The charges in *Kulmac* relating to the crimes of sexual assault and risk of injury stemmed from the same incidents. It is not clear whether that is true here. In the present case, there are two factual scenarios that could have led the jury to return a verdict of guilty as to the count of unlawful restraint. The jury could have found the elements of unlawful restraint within the facts that led to the sexual assault conviction, or the jury could have found that the elements were satisfied in the events that occurred after the sexual assault. The victim claimed that it was after the sexual assault when the defendant tied her wrist to his own wrist and lay on top of her. The defendant did not ask for a bill of particulars at trial and did not object to the charge as given, which did not connect or relate any particular facts to the charge of unlawful restraint.

We cannot know, therefore, which of the two fact patterns caused the jury to find the elements of unlawful restraint to have been proven beyond a reasonable doubt. The evidence here supported either, and the general verdict of guilty to the single count of unlawful restraint must be upheld. See *State* v. *Arnold*, 201 Conn. 276, 283, 514 A.2d 330 (1986). If the jury found the defendant guilty of unlawful restraint on the basis of the events occurring after the sexual assault, the proffered testimony would be irrelevant. The testimony had relevance only to whether the victim sought restraint during

consensual sexual intercourse, but was totally unrelated to a desire to be restrained when not so engaged. The evidence was properly excluded because, even if the rape shield statute did not apply, it was irrelevant.

## II

The defendant's second claim is that the trial court should have admitted into evidence the underpants of the victim as an exhibit during the cross-examination of a police officer. The underpants were shown to the jury during the cross-examination and were later admitted as a full exhibit.

Officer Margaret Gagnon had collected the victim's clothing at the hospital, including the underpants the victim had been wearing. Gagnon testified, while holding the bag containing the underpants, that they were in substantially the same condition as when she first obtained them. On cross-examination, Gagnon admitted that a marking was now present on the garment that had not been there originally, and that now there were holes in the underpants. Defense counsel asked, at this point, to show the underpants to the jury. Upon being informed that the underpants had only been marked for identification and were not a full exhibit, the defendant asked that they be entered as a full exhibit. The state's objection was sustained, out of the presence of the jury, because "something has happened to that and it hasn't been explained and that's a gap in the chain of custody." The court stated that the defendant could admit the underpants later during his case-in-chief.

The next day, the defendant renewed his request to enter the underpants as an exhibit, claiming that was necessary in order to impeach Gagnon. The court denied the request. On further cross-examination, Gagnon conceded that the underpants had a one inch hole in them that had not been present before. When Gagnon could not say whether the garment had been torn or

cut, the defendant asked to show the hole to the jury. This was allowed. Later that day, a criminologist testified that she had cut two holes in the underpants in order to perform tests on the fabric. The underpants were admitted as a full exhibit at that time.

The defendant claims that the delay in admitting the underpants as a full exhibit denied him his constitutional right to confront witnesses. The defendant argues that excluding the underpants for the reason that a gap existed in the chain of custody was improper. He states that because he was attempting to introduce the underpants for purposes of testing the credibility of Gagnon, the chain of custody should not have been an issue.

The defendant's contentions are meritless. The defendant was able to present an adequate cross-examination of Gagnon by pointing out discrepancies in her testimony without the use of the underpants as a full exhibit. The defendant also was able to show the hole in the underpants to the jury during Gagnon's testimony. The underpants later became an exhibit and the jury was able to examine them at that time. Any possibility of harm to the defendant was cured at that point. See *Stamford* v. *Kovac*, 229 Conn. 627, 631–32, 642 A.2d 1190 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.