STATE OF CONNECTICUT *v.* DAMIAN MALON
(AC 25960)

DiPentima, McLachlan and Hennessy, Js.

Argued February 17—officially released June 13, 2006

*William B. Westcott*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva B. Lenczewski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Damian Malon, appeals from the judgment of conviction, rendered after

a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95. On appeal, the defendant claims that the trial court improperly (1) diluted the state's burden of proof and violated the defendant's right to present a defense when it instructed the jury that it had to make a finding of consent in connection with the defense raised at trial by the defendant, (2) admitted evidence of misconduct by the defendant and (3) denied the defendant's right to confront witnesses and to present a defense. We disagree with respect to claims one and three and agree with the defendant as to claim two, but find that the admission of the challenged evidence was harmless. Accordingly, we affirm the judgment of the trial court.

The criminal charges lodged against the defendant arose from three incidents occurring at two different locations on two separate dates. The evidence before the court was as follows. The first incident occurred in the second half of October, 2001, at the home of Justin Pesillo, a friend of K, the victim.[1] Pesillo gave K[2] a ride home from her part-time job. The defendant was in the car at the time. Pesillo, the defendant and K all went back to Pesillo's house to "hang out" in his finished basement.[3] After a short period of time together, Pesillo left the basement and went into the garage. K testified that after Pesillo left the basement, the defendant came over to where she was sitting on a couch, talked to her for a little while and kissed her. She testified that he then asked her to have sex with him. She refused the

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] At the time, K was sixteen years old.

[3] The basement was a common place for Pesillo's friends to spend time. It had a couch, television, pool table and some arcade games. There was also a bathroom in the basement and a door that led directly into the garage.

request, telling the defendant that she engaged in sexual activity only within the context of an ongoing relationship. K testified that the defendant became aggressive and continued to ask her to have sex with him. She claimed that she got up from the couch, intending to go into the garage where Pesillo was working on his car, but the defendant also got up, kissed her and put his arms around her. K testified that he maneuvered her backward into a bathroom and closed and locked the door. According to K, the defendant again pressured her to have sex, but she refused. She testified that the defendant forced her onto the floor and that she was squirming around. She tried to push him away and said that she "didn't want this." K stated that the defendant told her it would be "okay" and that it was "no big deal." She testified that the defendant then pulled down his pants and had vaginal intercourse with her. K stated that after five to ten minutes, the defendant arose and left the bathroom. She also got up and walked into the garage. She did not say anything to Pesillo, who later drove her home. K did not mention this incident to her family or friends.

The second and third incidents occurred on the evening of November 2, 2001, during a party at a friend's home. Pesillo drove K to the party. They arrived at approximately 7:30 p.m. The defendant arrived at approximately 8 p.m. Sometime thereafter, K went outside to sit on the patio. The defendant went outside about three or four minutes later. He asked K to take a walk with him. K testified that she agreed to go for a walk, thinking that perhaps he was going to apologize for the prior incident. They walked to a basketball court that was approximately 200 to 300 yards away from the party. The defendant asked her to have sex with him. Each time he asked, K said no. The defendant told K that it was "no big deal" if they had intercourse because they had "already done it once." K testified that the

defendant asked her if she would just perform oral sex on him. She refused, but the defendant took hold of her by the waist, unzipped his pants, removed them, sat down and pulled K down beside him. K testified that the defendant pushed her head toward his penis. She claimed that she performed oral sex on him for approximately thirty seconds. When she stopped, she told the defendant that she did not want to continue the oral sex.

The third incident occurred moments after K performed oral sex on the defendant. K testified that the defendant claimed that he saw people with flashlights approaching the basketball court. K did not see anyone. The defendant grasped K's wrist and pulled her with him into a nearby wooded area. She told him that she wanted to go back to the party but that he said not to go back because there still could be some people out there near where he saw flashlights. The defendant got K to sit down next to him, and he again asked her to have sex with him. She said no. The defendant then started to unbutton her pants. K tried two or three times to push his hands away. She stated that he then positioned himself on top of her so that the weight of his body prevented her from being able to get up and that he used his legs to force her legs apart. He then had sexual intercourse with her. She testified that she turned her head to the side, did not make noise and waited for the assault to end. She estimated that the assault lasted for five to ten minutes.

When the assault was over, the defendant said, "I don't want to do anything you don't want to do." He then got up, pulled up his pants and headed back to the party. K followed behind him. When she arrived at the party, one of her friends asked her if she and the defendant had "hooked up." K told her friend that the defendant had "raped" her. K's friend noticed that K was crying and appeared dazed.

Less than one hour after returning to the party, Pesillo drove K home. She disclosed the assault to Pesillo. When she arrived at home, she called two friends and also told them about the assault. At the urging of her friends, K disclosed the assault to her mother. She then went to a hospital and was examined pursuant to the standard sexual assault protocols.

On June 28, 2004, by means of a substitute long form information, the state charged the defendant with three counts of sexual assault in the first degree and one count of unlawful restraint in the first degree. At trial, the defendant testified in his defense. He claimed that the sexual encounters between himself and K were consensual. The jury returned a verdict of guilty as to the third count of sexual assault in the first degree and as to the count of unlawful restraint in the first degree in connection with the last sexual assault. He was found not guilty of the other charges.

I

The defendant's first claim on appeal is that the court improperly diluted the state's burden of proof and violated the defendant's right to present a defense when it instructed the jury that it had to make a finding of consent in connection with the defense raised at trial by the defendant. We disagree.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues

and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Cramer*, 57 Conn. App. 452, 460, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000). "A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and . . . afford[s] proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Milardo*, 224 Conn. 397, 410, 618 A.2d 1347 (1993).

The defendant did not object to the jury instruction on the defense of consent when it was given at trial and now seeks review of his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id.

The court instructed the jury as follows with regard to the defense of consent: "The defendant contends that the complainant consented to any sexual conduct complained of here. If you find [that] [K] consented to the act of sexual intercourse, you cannot find that the act was compelled. Such consent must have been actual and not simply acquiescence brought about by force,

by fear or by shock. The act must have been truly voluntary on the part of [K]. . . . Consent may be express or you may find that it is implied from the circumstances that you find existed. Whether there was consent is a question of fact for you to determine."

Following the delivery of the court's instruction, the defendant requested additional instruction regarding the consent defense. Accordingly, the court delivered the following instructions: "The state contends that the force or threat or use of force was the manner in which the sexual conduct was accomplished. The defendant indicated that, through testimony and evidence . . . presented here in the courtroom that he believes, based upon the evidence, consent. If you find that [K]—the complainant consented to the act of sexual intercourse, you cannot find that the act was compelled. Such consent must have been actual and not simply acquiescence brought about by force, by fear or by shock. The act must have been truly voluntary on the part of the complainant. Consent may be express or you may find that it is implied from the circumstances that you find existed.

"And to that end, further instruction on the issue of consent. Whether the defendant has forced or compelled the complainant within the meaning of the [charge of] first degree sexual assault depends not upon the complainant's subjective state of mind about whether she had consented, but upon her objective manifestations of consent as reasonably construed by the defendant.

"Therefore, after a full comparison of all the evidence, you must decide whether the state has proven beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented. In other words, if you find that the defendant reasonably believed from words and conduct

of the complainant that she was consenting, then, of course, you must find the defendant not guilty.

"However, if force is proven beyond a reasonable doubt, lack of consent is implicit. It is not required that the complainant explicitly reject the unwanted sexual advances in a verbal manner. Similarly, it is not necessary that [K] physically resist the unwanted sexual advances. Consent, again, may be express or you may find that it is implied from the circumstances that you find existed . . . . Whether there was consent is a question of fact for you to determine."

The court had no duty to instruct the jury expressly that, once consent had been raised as an issue in a sexual assault case, the prosecution must disprove beyond a reasonable doubt that the complainant consented. See *State* v. *Rivera*, 30 Conn. App. 523, 621 A.2d 298 (1993), aff'd, 228 Conn. 756, 638 A.2d 34 (1994). "Where use of force or a threat of force is proven beyond a reasonable doubt, lack of consent is implicit. . . . Because the use of force or a threat of use of force is essentially the converse of consent, no duty exists upon the court to instruct the jury as if [lack of consent] were a statutory element." (Citations omitted.) Id., 525. Here, the court instructed the jury on each of the elements of the crime, including the use of force or the threat of the use of force element, and instructed that the prosecution must prove each element beyond a reasonable doubt. The jury, in returning a guilty verdict, found that the defendant had used force to compel K to submit to his assault. Accordingly, K's lack of consent was implicit. The prosecution's burden of proof was not diluted. We conclude that the challenged instructions were correct in the law and sufficient to guide the jury in its verdict. The defendant cannot prevail on this claim because it does not satisfy the third requirement of the *Golding* analysis.

## II

The defendant's second claim on appeal is that the court improperly admitted evidence of his misconduct. Specifically, he claims that the evidence was more prejudicial than probative on the issues of identity and intent.

The following facts are pertinent to the defendant's claim. At trial, the prosecution proffered evidence that the defendant and some friends had attempted to intimidate Pesillo so that he either would not testify or, if he did, he would alter his testimony in favor of the defendant. The prosecution argued that the evidence was admissible to establish the identity of the defendant and his criminal motive or intent. The defendant objected and argued that his identity was not an issue in this case. The court admitted the evidence on the ground that it was more probative than prejudicial in this case.

Pesillo testified that in December, 2003, he was leaving a local tattoo parlor when two large, muscular men approached him and instructed him to wait for "someone" on the street in front of the tattoo parlor. He testified that after approximately fifteen minutes, the defendant and another man arrived. According to Pesillo, the defendant told him that he was "messed up" for "ratting" on the defendant in connection with the rape allegations and that he would "get his." The defendant's friend threatened to hit Pesillo, but the defendant warned against it, saying that Pesillo likely would call the police. The defendant then told Pesillo to "get out of their face[s]" and that they "didn't want to see [him] anymore."

Following Pesillo's testimony, the court delivered a limiting instruction.[4] After final argument, the prosecution requested that the court instruct the jury that the

---

[4] The court stated: "Members of the jury, the evidence offered by the state based upon the testimony of this witness, Mr. Pesillo, arising out of the

threatening incident also could be considered as a con-
sciousness of guilt on the part of the defendant. The
defendant moved to strike the testimony. The court
delivered the jury instructions but omitted a conscious-
ness of guilt instruction.[5]

incident at the House of Pain in Waterbury has been admitted to prove—
not to prove the bad character of the defendant or the defendant's tendency
to commit crimes. That's not what it has been offered for.

"It's offered to establish certain elements such as identity and intent and
for that purpose only. And it is not—I hope it does not, I trust you will
follow these instructions that—because it may, it may predispose some
minds uncritically to believe that the defendant may be guilty of the offenses
for which he's charged merely because of what has been alleged here by
Mr. Pesillo, this prior misconduct.

"It's not to be considered for that; only to establish certain elements as
offered by the state to show intent and identity. This is a limited instruction.
I will give you further instructions in detail when the matter is concluded
and you have the court's instructions. But only for a limited purpose."

[5] The court stated: "There has been evidence here offered by the state of
prior acts of misconduct of the defendant. It's not being admitted to prove
the bad character of the defendant or his tendency to commit any criminal
acts. Such evidence has been admitted solely for the existence of the intent
as it relates to the crimes as charged and the identity of the person who
committed the crimes.

"You may not consider such evidence as establishing a predisposition on
the part of the defendant to commit any of the crimes charged or to demon-
strate any criminal propensity. You may consider such evidence if you
believe it, and this evidence relates to the limiting instruction earlier as to
the testimony of Mr. Pesillo as to conduct complained of in this limiting
instruction at the House of Pain.

"You may consider such evidence if you find—if you believe it and further
find it logically, rationally and conclusively supports the issues for which
it has [been] offered, the identity and intent, as related to the elements of
the crimes as I will define them for you when that applies, but only if it
bears on those issues.

"On the other hand, if you do not believe such evidence, or even if you
do, if you find that it does not logically, rationally and conclusively support
the issues for which it has been offered by the state, identity and intent,
then you may not consider that testimony for any purpose.

"You may not consider evidence of prior misconduct even for the limited
purpose of attempting to prove the elements of the crime other than what
has been presented to you in the limited instruction, intent and identity,
because it may predispose your mind, and critically, to believe that the
defendant may be guilty of the offense here charged merely because of the
alleged prior misconduct. For this reason, you may consider this evidence
only on the issues as identified here, and that is the identity and intent.

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 396, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). "Evidence [of prior misconduct] may be admissible, however, for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." (Internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 790, 785 A.2d 573 (2001).

"[Our courts] have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id., 790–91. The evidence of misconduct did not satisfy the legal rationale

"You're further instructed that defendant's exhibit B, the statement of Justin Pesillo to the Watertown police on November 3, 2001, was admitted again, for a limited purpose. I've just described that to you. As you recall, Mr. Pesillo was allowed to testify as to—to an alleged incident in—December, 2003, wherein he claims that he was intimidated by the defendant because Mr. Pesillo ratted the defendant out by making a statement to the police.

"The statement, defendant's exhibit B, was admitted not for the truth of the statements contained but only to allow you to use it in your consideration of what, if any, belief or weight you should give to the alleged incident, which was admitted again, for the purposes of identity and intent, and not to show that the defendant must be guilty of the crimes because he has bad character."

for admitting evidence under the identity and intent exceptions.

## A

First, we address the identity exception. There was no dispute as to the identity of the defendant. The defendant testified and readily conceded that he engaged in the acts alleged on each and every occasion at issue, leaving consent as the only contested issue. Accordingly, admitting this evidence of misconduct would have been more prejudicial than probative on the issue of identity.

Although it was improper to admit the evidence of misconduct on the issue of identity, we conclude that it was harmless. The defendant bears the burden to prove the harmfulness of the trial court's evidentiary ruling. He must demonstrate that "it is more probable than not·that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 393, 796 A.2d 1191 (2002). "The question is whether . . . the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 193, 896 A.2d 109 (2006). The fact that the jury found the defendant not guilty of two of the four charges indicates that the admission of the evidence of misconduct did not so prejudice the jury that it could not treat the defendant fairly.

## B

It was also improper to admit the evidence of misconduct for the purpose of establishing a criminal intent on the part of the defendant to sexually assault K two

years earlier. There does not exist an element of specific intent for sexual assault crimes. See *State* v. *Jeffrey*, 220 Conn. 698, 718, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). Accordingly, there was no element of criminal intent to be proven for the sexual assault charges.

In addition to the three sexual assault charges, there was one count of unlawful restraint. We also conclude that the misconduct evidence was not relevant to this charge. The reason for admitting misconduct evidence to prove intent is that there is something in the misconduct that illuminates the defendant's criminal purpose in undertaking the crimes charged. "Evidence of other misconduct . . . may be allowed for the purpose of proving many different things, such as intent . . . . Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon. . . . When a trial court determines whether it will allow such evidence, it needs to examine the similarities between the prior conduct and the current crime." (Internal quotation marks omitted.) *State* v. *DeJesus*, 91 Conn. App. 47, 56–57, 880 A.2d 910 (2005). Here, there is no relevant nexus between the dispute between Pesillo and the defendant that occurred two years after the incident and the crime charged. The misconduct did not support an inference of criminal intent for the charge of unlawful restraint. Again, however, for the same reasons, we conclude that the admission of the evidence of misconduct to prove intent was harmless.

### III

The defendant also claims that the court improperly denied him his rights to confront witnesses and to present a defense. The following facts are pertinent to this claim. The defendant filed a motion seeking to cross-examine K regarding her prior sexual relationships with

young men of the defendant's age. During her direct testimony, K testified that when being pressured for sexual favors by the defendant, she gave "excuses" for refusing him, including the excuse that she normally did not engage in sexual relations with men outside of an existing and ongoing relationship. On cross-examination, the defendant revisited his motion to admit evidence of K's prior sexual conduct with other young men. The court invoked the rape shield statute; General Statutes § 54-86f;[6] to preclude the proffered inquiry on cross-examination. During his presentation of the defense, the defendant proffered the testimony of Nicholas Pesillo, the brother of Justin Pesillo. The defendant wanted him to testify that on two occasions in September, 2001, he engaged in sexual relations with K. The court denied the defendant's request and ruled that the proffered testimony was inadmissible.

The court "has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 653, 712 A.2d 919 (1998). The rape shield statute is designed to restrict the admissibility of evidence of a sexual assault victim's prior sexual conduct, unless one of the statutory exceptions is satisfied. See

---

[6] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."

id., 647. "The statute was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material." (Internal quotation marks omitted.) *State* v. *Christiano*, 228 Conn. 456, 469, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). It reflects the modern understanding that a victim's prior sexual conduct is generally irrelevant.

We recognize that while the state's interest in restricting the admissibility of such evidence is substantial, it cannot outweigh the compelling constitutional interests of the defendant. Id., 470. The rape shield statute "directs the court to examine the defendant's constitutional rights, implicating both his sixth amendment right to confront witnesses and his fourteenth amendment due process right to call witnesses on his own behalf." (Internal quotation marks omitted.) *State* v. *Lake*, 43 Conn. App. 715, 724, 686 A.2d 510 (1996). The court must also be mindful that "the [defendant's] right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 91 Conn. App. 74. One of the legitimate interests is the court's "right, indeed, duty, to exclude irrelevant evidence." (Internal quotation marks omitted.) *State* v. *Christiano*, supra, 228 Conn. 470. If the court determines that the proffered evidence is not relevant, "the defendant's right to present witnesses in his own behalf has not been affected and the evidence can properly be excluded." *State* v. *Lake*, supra, 727. Moreover, even evidence that is relevant to the defendant's defense may be excluded where it is unnecessarily prejudicial to K. See id., 728.

Here, the court properly exercised its discretion by precluding inquiry into K's prior sexual history. The challenged evidence was not relevant to the issues

implicated, and the prejudicial impact on K would outweigh the probative value. Accordingly, we conclude that the court did not deny the defendant his right to confront witnesses or to present a defense.

The judgment is affirmed.

In this opinion the other judges concurred.